# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

HECTOR F. LIBREROS,

    Plaintiff,

v.    Case No: 8:23-cv-1968-CEH-LSG

SARASOTA-MANATEE JEWISH
HOUSING COUNCIL, INC, d/b/a
AVIVA SENIOR LIVING,

    Defendant.

## ORDER

This matter comes before the Court on Defendant Sarasota-Manatee Jewish Housing Council, Inc.'s Motion to Dismiss Second Amended Complaint (Doc. 29), Plaintiff Hector F. Libreros' response in opposition (Doc. 34), and Defendant's reply (Doc. 37). In this employment action, Plaintiff alleges violations of the Family Medical Leave Act ("FMLA"). Defendant argues that the Second Amended Complaint fails to state a claim under the FMLA, in part due to the insufficiency of the allegations that Plaintiff's illness constitutes a "serious health condition."

Upon review and consideration, and being fully advised in the premises, the Court finds that the motion to dismiss is due to be granted. Plaintiff will be given one final opportunity to amend the complaint.

I.  **Background**[1]

On August 31, 2023, Plaintiff Hector F. Libreros filed suit against Defendant Aviva Senior Living LLC., asserting interference and retaliation claims under the FMLA. Doc. 1. Defendant initially moved to dismiss the Amended Complaint Plaintiff had filed *sua sponte*. Docs. 15, 19. The Court granted Plaintiff leave to file a Second Amended Complaint ("SAC"), rendering the motion to dismiss moot. Docs. 26, 27, 28. Defendant now moves to dismiss the SAC. Doc. 29.

In the SAC, Plaintiff alleges that he was employed by Defendant from approximately January 31, 2021, to August 10, 2023, during which time he worked a regular schedule of Tuesdays through Saturdays. Doc. 27 ¶¶ 8, 14. During his last six months of employment, Plaintiff had several episodes of illness for which he sought medical attention. *Id.* ¶ 12. He was under continued evaluation and medical care by healthcare specialists to rule out an occupational disease. *Id.* ¶¶ 13, 15.

On Saturday, July 29, 2023, Plaintiff became ill at the end of his shift, and remained home the next day because he was feeling very sick. *Id.* ¶ 15. His condition worsened on Monday, when he experienced diarrhea, vomiting, fever, and a rash all over his body. *Id.* On Tuesday, August 1, 2023, his next scheduled day of work,

---

[1] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court derives the statement of facts from the factual allegations of the pleadings, which the Court must accept as true in ruling on the motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). The Court also construes the allegations in the light most favorable to the plaintiff. *See, e.g., Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).

Plaintiff notified his supervisor that he was sick and unable to go to work. *Id.* ¶ 17. Plaintiff obtained a medical appointment for Monday, August 7, 2023. *Id.* ¶ 15.

Although he was still feeling sick, Plaintiff reported to work on Thursday, August 3, 2023. *Id.* ¶ 18. Upon his arrival, his supervisor fired him for missing work. *Id.* Plaintiff then complained to Human Resources ("HR"), "explaining his health issues." *Id.* ¶ 19. HR sent him home while it investigated, but called him later that day to inform him that he would receive two days of paid leave and could return to work the next day. *Id.*

Plaintiff returned to work as instructed on Friday, August 4, 2023, and continued his regular schedule. *Id.* ¶ 20. However, his supervisor fired him again on Thursday, August 10, 2023. *Id.* ¶ 21. Again, HR instructed him to return home and wait for their call—but this time Plaintiff did not receive a call, was unable to reach Defendant, and was never scheduled to work for Defendant again. *Id.* ¶¶ 22-23. Plaintiff therefore alleges that he was fired on or about August 10. *Id.* ¶ 24.

Plaintiff asserts counts of FMLA interference and retaliation. Doc. 27. With respect to his interference claim, he alleges that he notified Defendant about his medical emergency on August 1, providing sufficient information for Defendant to identify that an FMLA leave was appropriate to diagnose and treat Plaintiff's serious health condition. *Id.* ¶¶ 25, 54. However, Defendant did not fulfill its obligation to notify Plaintiff about his eligibility for and rights and responsibilities under the FMLA, and it denied Plaintiff the FMLA leave to which he was entitled by wrongfully

3

terminating him. *Id.* ¶¶ 55-57, 62, 68. With respect to the retaliation claim, Plaintiff alleges that he engaged in a protected activity by giving Defendant sufficient information demonstrating the need for FMLA leave to treat his serious health condition. *Id.* ¶ 26. As a result, Defendant terminated his employment. *Id.* ¶¶ 92-96.

In its motion to dismiss, Defendant argues that the SAC fails to state a claim under the FMLA for interference or retaliation. Doc. 29. Defendant first contends that Plaintiff did not suffer from a serious health condition, because he failed to demonstrate that he was incapacitated for more than three consecutive calendar days. *Id.* at 5-8, 10, 11. Next, Defendant argues that Plaintiff failed to provide sufficient notice that he was asserting his rights under the FMLA, because he only notified Defendant that he was "sick." *Id.* at 8, 9. Finally, Plaintiff was not prejudiced by Defendant's actions because Defendant paid him for the two days of work he missed. *Id.* at 9, 10.

Opposing Defendant's motion, Plaintiff argues that the SAC adequately alleges that he suffered from a serious health condition because he was incapacitated for four consecutive days. *Id.* Doc 34. at 8. He further contends that his allegations that he notified his supervisor that he was unable to work because of his illness and informed HR about his symptoms are sufficient to allege notice. *Id.* at 9-10. Lastly, Plaintiff argues that he suffered prejudice because he was fired twice after putting Defendant on notice of his FMLA rights. *Id.* at 10-11.

In reply, Defendant contends that Plaintiff improperly relies on new factual allegations not contained in the SAC. Doc. 37 at 2-5. Defendant also maintains that

Plaintiff did not suffer prejudice to support an interference claim, rather than a retaliation claim, since he received all the leave he requested. *Id*. at 6.

## II. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), quoting Fed. R. Civ. P. 8(a)(2). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere naked assertions are also insufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, the Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III. Discussion

The FMLA protects employees against interference with and retaliation for the exercise or attempted exercise of their substantive rights under the statute. *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1247 (11th Cir. 2015). Defendant argues that Plaintiff fails to state a claim for either interference or retaliation, because the SAC does not adequately allege the existence of a serious health condition, that Plaintiff

5

gave the requisite notice to allow Defendant to determine that FMLA may apply to his leave request, or that he was prejudiced by any interference with his FMLA rights. Upon review, Defendant is correct as to all three points. Accordingly, the motion to dismiss is due to be granted.

### A. Serious Health Condition

Under the FMLA, an eligible employee is entitled to protected medical leave because of, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of" the employee's position. 29 U.S.C. § 2612(a)(1)(D). Both FMLA interference and retaliation claims require the plaintiff to establish a "serious health condition." *Russell v. North Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003).

The FMLA defines "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* § 2611(11). In turn, the FMLA's implementing regulations define "continuing treatment by a health care provider," in relevant part, as:

> (a) Incapacity and treatment. A period of incapacity of *more than three consecutive, full calendar days*, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or

6

> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.
>
> (3) The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place *within seven days of the first day of incapacity.*

29 C.F.R. § 825.115 (emphasis added). The term "incapacity" means "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." *Id.* § 825.113(b).

The SAC alleges that Plaintiff "felt sick" for a period of six days, from the end of his shift on Saturday until the following Thursday. Doc. 27 ¶¶ 15, 18. He worked on Saturday, then "stayed home feeling very sick" on Sunday. *Id.* His condition worsened on Monday to include diarrhea, vomiting, and fever, and he was unable to go to work on Tuesday and Wednesday. *Id.* at ¶¶ 15, 17. Because Plaintiff's work schedule runs from Tuesday to Saturday, he missed only two days of work during this time. *Id.* ¶ 14.

Defendant argues that Plaintiff was not incapacitated for "more than three consecutive, full calendar days," 29 C.F.R. § 825.115(a), because he only missed two days of work. Doc. 29 at 5-6. Reading the allegations in the light most favorable to Plaintiff, however, he has sufficiently pleaded that his illness prevented him from performing regular daily activities on Sunday and Monday as well, based on the allegation that he "stayed home" on Sunday and the description of his symptoms on Monday. Defendant's argument to the contrary is based solely on Plaintiff's work

7

schedule rather than the regulatory language or the allegations about his physical condition, and is therefore without merit. Accordingly, the SAC adequately pleads that Plaintiff was incapacitated for "more than three consecutive, full calendar days."

However, the allegations regarding Plaintiff's medical treatment are not sufficient to satisfy the standard for "continuing treatment by a healthcare provider." *See* Doc. 27 at 7-8. Significantly, there is no indication that Plaintiff received in-person treatment within seven days of the onset of his incapacitation, as the regulations require. *See* 29 C.F.R. § 825.115(a)(3). The SAC alleges that Plaintiff "got a medical appointment for Monday, 07, 2023," which the Court infers to mean Monday, August 7, 2023. Doc. 27 at ¶ 15. If his period of incapacity began on Sunday, July 30, as the Court found the SAC alleges, then he did not go to the doctor soon enough to satisfy the regulatory requirement. If, on the other hand, the period of incapacity began late enough for him to have received treatment within seven days, he would not have been incapacitated for more than three consecutive days, since he returned to work on Thursday, August 3.

In his response in opposition to Defendant's motion to dismiss, Plaintiff points to the allegations that he had "felt sick several times" during the previous six months, that he "was under continued evaluation by professional healthcare specialists (immunologist/allergist/dermatologist) to rule out an occupational disease," and that he "was under medical care for a serious health condition, and an occupational disease was suspected." Doc. 27 ¶¶ 12, 13, 16. He argues these allegations are sufficient to suggest that he had a "serious health condition" for FMLA purposes. Doc. 34 at 8-9.

8

But Plaintiff's conclusory recitation that he was under "continuing treatment" is insufficient, absent factual allegations that align with the clear regulatory definition of the term. *See* 29 C.F.R. § 825.115. Plaintiff has not plausibly alleged that he experienced a serious health condition involving continuing treatment by a health care provider. Because the SAC does not contain factual allegations demonstrating that Plaintiff suffered from a serious health condition within the meaning of the FMLA, it does not state a claim for FMLA interference or retaliation. *See*, *e.g.*, *Outlaw v. Prattville Health & Rehab., LLC*, No. 2:22-cv-31, 2022 WL 1491666, *2 (M.D. Ala. May 11, 2022) (dismissing FMLA interference and retaliation claim where complaint did not plausibly allege that plaintiff suffered from a qualifying serious health condition); *Vegas v. UPS Ground Freight, Inc.*, No. 6:19-cv-220-ACC-DCI, 2019 WL 13152025, *4 (M.D. Fla. March 28, 2019) (same).

### B. Notice and Prejudice

To state a clam for FMLA interference, the plaintiff must allege that he was entitled to a benefit under the FMLA, and that his employer denied him that benefit. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). In addition, the plaintiff "can state an interference claim only if he gave his employer proper notice of his need for leave." *Blake v. City of Montgomery*, No. 20-14229, 2021 WL 5177429, *4 (11th Cir. Nov. 8, 2021), citing *White*, 789 F.3d at 1195. Moreover, "[a]n employee may obtain relief for interference with an FMLA right only if she 'has been prejudiced by the violation.'" *Ramji v. Hospital Housekeeping Systems, LLC*, 992

F.3d 1233, 1245 (11th Cir. 2021), quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).  The latter two principles are interrelated with respect to the SAC's allegations of FMLA interference.

Where the need to take FMLA leave is foreseeable, the statute requires an employee to provide the employer with at least 30 days' notice before the date the leave is to begin, or "such notice as is practicable." 29 U.S.C. §§ 2612(e)(1), (2).  The statute is silent regarding notice where the need for FMLA leave is unforeseeable, as here, but its implementing regulations state that in such a circumstance the employee must provide notice "as soon as practicable under the facts and circumstances of the particular case." 29 C.F.R. § 825.303(a).  With respect to the content of the notice, the employee "shall provide sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." *Id.* § 825.303(b).  The employee "need not expressly assert rights under the FMLA or even mention the FMLA." *Id.*  He may indicate, for example, that he "is under the continuing care of a health care provider," or that "a condition renders [him] unable to perform the functions of the job[.]" *Id.*  However, "[c]alling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act." *Id.*

Here, Plaintiff alleges that he called out sick on Tuesday, August 1. Doc. 27 ¶ 17 ("Plaintiff notified his supervisor…that he was sick and unable to go to work.").  The SAC further alleges that this communication "appropriately notified" Defendant "about Plaintiff's medical emergency" and "gave Defendant enough information

related to the need for an FMLA leave to treat his serious health condition." Doc. 27 ¶¶ 25-26. However, there is no indication that Plaintiff gave Defendant any additional information, beyond simply "calling in 'sick,'" that would allow Defendant to reasonably determine that the FMLA may apply. The allegations that the August 1 communication provided sufficient notice are conclusory and unsupported. Accordingly, pursuant to 29 C.F.R. § 825.303(b), the allegations do not establish that Plaintiff gave Defendant proper notice of his need for FMLA leave on August 1. *See*, *e.g.*, *Martinez v. Aspen Dental Mgmt., Inc.*, No. 2:20-cv-545-JES-MRM, 2022 WL 523559, *8 (M.D. Fla. Feb. 22, 2022) (citing § 825.303(b) and collecting cases that found calling in sick did not provide sufficient notice under the FMLA).

Although the SAC alleges the August 1 communication gave sufficient notice, in his response to the motion to dismiss, Plaintiff also relies on the allegation that he provided more information to HR when he returned to work on August 3, after his supervisor initially fired him. Doc. 34 at 10, citing Doc. 27 ¶¶ 18-19. There are multiple problems with this argument. First, the SAC does not allege the full contents of his conversation with HR. [2] Without more information about what he conveyed, the SAC does not establish that Plaintiff gave Defendant proper notice of his need for FMLA leave on August 3.

---

[2] As Defendant correctly points out, Plaintiff's response contains factual allegations about the information he conveyed to HR that were not contained in the SAC. Doc. 37 at 4-5. The Court considers only the allegations in the SAC.

11

Even if it did, however, Plaintiff provides no authority for the contention that information provided *after* a leave request is made satisfies the FMLA's notice requirement. On the contrary, in *Cruz v. Publix Super Markets, Inc.*, the Eleventh Circuit approvingly cited a Seventh Circuit case in which the court found the plaintiff's notice insufficient where he provided the necessary information "*after* his request for leave had been denied." 428 F.3d 1379, 1385 (11th Cir. 2005) (emphasis in original), citing *Aubuchon v. Knauf Fiberglass, GmbH*, 359 F.3d 950, 952 (7th Cir. 2004). Quoting *Aubuchon*, the *Cruz* court stated:

> Employees should not be encouraged to mousetrap their employers by requesting FMLA leave on patently insufficient grounds and then after leave is denied obtaining a doctor's note that indicates that sufficient grounds existed, though they were never communicated to the employer.
>
> [359 F.3d at 953.] The employee cannot merely demand leave; he must give the employer a reason to believe that he is entitled to it. *Id.* at 952. For example, "[i]f you have brain cancer but just tell your employer that you have a headache, you have not given the notice that the [FMLA] requires." *Id.* Thus, the notice requirement was not satisfied because the employee did not give complications or a serious health condition as the reason for taking leave, but merely expressed his desire to stay with his wife until she gave birth. *Id.* at 952-53.

*Cruz*, 428 F.3d at 1385. The Eleventh Circuit followed suit in *Cruz*, finding that the plaintiff had withheld information in her FMLA request that would have triggered the employer's duty to request more details. Without that information, the employer "could not reasonably be expected to conclude that her absence qualified for FMLA leave." *Id.*; *see also Couick v. Morgan*, No. 4:10-cv-153, 2010 WL 5158206, *3 (S.D. Ga.

12

Dec. 14, 2010) (plaintiff failed to state a claim for FMLA interference where allegations did not establish that she provided sufficient information about her medical condition before employer denied her request for leave, because "[n]otice that comes *after* an alleged interference with an employee's FMLA rights is ineffective, even if the content would have been sufficient.") (emphasis added). Here, too, any information Plaintiff provided in the August 3 conversation with HR would not cure the defects in his August 1 leave request. Therefore, to the extent Plaintiff alleges FMLA interference with his August 1 leave request, he fails to state a claim because of a lack of proper notice.

In addition, to the extent that the SAC alleges that the FMLA interference with his August 1 request took the form of his purported termination on August 3, Defendant is correct that it does not state a claim because it does not establish that he experienced prejudice as a result of the alleged interference. *See* Doc. 29 at 9-10; *Ramji*, 992 F.3d at 1245. Rather, the SAC alleges that Plaintiff was not actually terminated on August 3, and was instead given paid leave for the two missed days and permitted to return to work. Doc. 27 at ¶¶ 19-20.

The Court observes that Plaintiff's interference claim appears to rest on two other grounds besides the August 1 leave request and August 3 termination, but those grounds also do not state a claim for interference as they are currently written. First, the SAC alleges that Plaintiff was "entitled to leave under the FMLA to take care of his serious health condition," but that "Defendant did not notify Plaintiff about his eligibility status and rights and responsibilities under the FMLA." Doc. 27 ¶¶ 55-56.

It further alleges that "Defendant's failure to notify Plaintiff about his FMLA rights to protected leave caused Plaintiff to lose his employment." *Id.* ¶ 64; *see also id.* ¶ 68. Although an employer's failure to satisfy FMLA notice requirements[3] may give rise to an interference claim, the employee, again, must identify some prejudice he suffered as a result. *See* 29 C.F.R. § 825.300(e); *White*, 789 F.3d at 1199 n.10; *Ramji*, 992 F.3d at 1245-48 (questions of fact existed as to whether defendant's failure to give required FMLA notices prejudiced plaintiff's ability to obtain reinstatement or inflicted other damages). The SAC does not adequately allege any causal connection between Defendant's alleged failure to provide notice and Plaintiff's August 10 termination, nor does it identify other prejudice Plaintiff may have experienced—even assuming it established that he triggered Defendant's duty to provide those notices, which it does not. To the extent the interference claim is based on Defendant's alleged failure to provide FMLA notices, it does not state a claim.

Second, the SAC also appears to allege that the FMLA interference took the form of his August 10 termination. *See* Doc. 27 ¶¶ 62, 64, 68. Defendant briefly argues that Plaintiff's termination may support only an FMLA retaliation claim, not an interference claim. Doc. 37 at 5. However, an interference claim may be based on an employer's interference with an employee's right to reinstatement after returning from covered leave, so it is possible that Plaintiff could allege an interference claim based

---

[3] *See* 29 C.F.R. §§ 825.300(b)(1), (c)(1) (within five days of learning an employee may be entitled to FMLA leave, an employer must give him notice of his FMLA eligibility and his "specific expectations and obligations" related to FMLA leave).

14

on his termination after he received the two days of leave. *See, e.g.*, *Strickland v. Water Works & Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001). Given the myriad deficiencies with the allegations in the SAC and the lack of clarity regarding the type of interference claim Plaintiff is raising, however, the Court cannot determine whether he is attempting to assert this theory.[4]

Although Plaintiff has already amended the complaint twice, he has never done so in response to a Court order. Accordingly, the Court will dismiss the SAC without prejudice and give him one final opportunity to state a valid claim under the FMLA. In addition, to the extent Plaintiff intends to assert multiple theories of FMLA interference, he must separate them into distinct counts to promote clarity and provide Defendant adequate notice of what it must defend against. *See Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (describing a complaint "that commits the sin of not separating into a different count each cause of action or claim for relief" as an impermissible type of shotgun pleading). Plaintiff is cautioned that the failure to cure the deficiencies identifed in this Order may result in dismissal of his claims with prejudice upon an appropriate motion by Defendant.

Accordingly, it is **ORDERED**:

1. Defendant Sarasota-Manatee Jewish Housing Council, Inc.'s Motion to Dismiss Second Amended Complaint (Doc. 29) is **GRANTED**.

---

[4] The lack of clarity in the SAC is exacerbated by its restatement of most of the factual allegations within each count, even though each count already incorporates the factual allegations. *See, e.g.*, Doc. 27 ¶¶ 36, 72.

2. The Second Amended Complaint is **DISMISSED**, without prejudice.

3. Plaintiff is granted leave to file a Third Amended Complaint within **FOURTEEN (14) DAYS** from the date of this Order, which cures the deficiencies discussed in this Order. Failure to file an amended complaint within the time provided will result in this action being dismissed, without prejudice, and without further notice.

**DONE** and **ORDERED** in Tampa, Florida on December 2, 2024.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties