## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

HECTOR F. LIBREROS,

      Plaintiff,

v.                                                         Case No: 8:23-cv-1968-CEH-LSG

SARASOTA-MANATEE JEWISH
HOUSING COUNCIL, INC, d/b/a
AVIVA SENIOR LIVING,

      Defendant.

_____

### <u>ORDER</u>

This matter comes before the Court on Defendant Sarasota-Manatee Jewish Housing Council, Inc.'s Motion to Dismiss Third Amended Complaint (Doc. 56), Plaintiff Hector F. Libreros' response in opposition (Doc. 59), and Defendant's reply (Doc. 62).

In this employment action, Plaintiff alleges violations of the Family Medical Leave Act ("FMLA"). In a prior Order (Doc. 43), the Court dismissed the Second Amended Complaint with leave to amend because it failed to state a claim. Defendant argues that the Third Amended Complaint ("TAC," Doc. 55) does not cure the defects identified in the prior Order.

Upon review and consideration, and being fully advised in the premises, the Court finds that the motion to dismiss is due to be granted-in-part and denied-in-part,

to the extent that Counts I and II will be dismissed, and the action will proceed as to Count III.

## I.    <u>Background</u>[1]

On August 31, 2023, Plaintiff Hector F. Libreros filed suit against Defendant Aviva Senior Living LLC., asserting interference and retaliation claims under the FMLA in connection with the termination of his employment. Doc. 1.  He filed an Amended Complaint, *sua sponte*, and then received permission to file a Second Amended Complaint after Defendant moved to dismiss the Amended Complaint. Docs. 15, 19, 26, 27.

On November 21, 2024, the Court granted Defendant's motion to dismiss the Second Amended Complaint, finding that it did not plausibly allege that Plaintiff suffered from a serious health condition, that he gave his employer proper notice of his need for FMLA leave, or that he was prejudiced as a result of any FMLA interference. Doc. 43.   The Court indicated that it would give him "one final opportunity to state a valid claim under the FMLA," and that "the failure to cure the deficiencies identified in this Order may result in dismissal of his claims with prejudice." *Id.* at 15.

---

[1] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court derives the statement of facts from the factual allegations of the pleadings, which the Court must accept as true in ruling on the motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  The Court also construes the allegations in the light most favorable to the plaintiff. *See*, *e.g.*, *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).

The Third Amended Complaint continues to assert counts of FMLA interference and retaliation. Doc. 55. It alleges that Plaintiff was employed by Defendant in a maintenance role from approximately January 31, 2021, to August 10, 2023, during which time he worked a full-time schedule of Tuesdays through Saturdays. *Id.* ¶¶ 8, 9, 16. Plaintiff experienced several bouts of illness during his last six months of employment, necessitating continuing medical treatment for toxic substance exposure and systemic contact dermatitis. *Id.* ¶¶ 12-14. Plaintiff alleges that those conditions were caused by his contact with harsh chemicals at work, and are serious health conditions under the FMLA. *Id.* ¶¶ 14-15.

On Saturday, July 29, 2023, Plaintiff became ill at the end of his shift and remained home the next day because he was feeling very sick. *Id.* ¶ 17. His condition worsened on Monday, when he experienced diarrhea, vomiting, fever, and a rash all over his body. *Id.* Plaintiff obtained a medical appointment for Monday, August 7, 2023, and also received in-person treatment on Wednesday, August 2, 2023. *Id.* ¶¶ 17-18.

On Tuesday, August 1, 2023, his first scheduled day of work since becoming ill, Plaintiff notified his supervisor that he was sick and unable to go to work. *Id.* ¶ 21. Specifically, he "informed his supervisor that he had been suffering from skin rashes all over his body, vomiting, fever, and diarrhea," and that "he had been under the continuing care of a doctor and that his condition rendered him unable to perform the functions of his job." *Id.* ¶¶ 22-23.

Although he was still feeling sick, Plaintiff reported to work on Thursday, August 3, 2023. *Id.* ¶ 24. Upon his arrival, his supervisor fired him for missing work. *Id.* Plaintiff then complained to Human Resources ("HR"), informing HR that he "had skin rashes all over his body, vomiting, fever, and diarrhea," "that his condition rendered him unable to perform the functions of his job," and that "[h]e had been very sick for five days already, and he continued to be sick." *Id.* HR sent him home while it investigated, and called him later that day to inform him that he would receive two days of paid leave and could return to work the next day. *Id.*

Plaintiff returned to work as instructed on Friday, August 4, 2023, and continued his regular schedule. *Id.* ¶ 26. However, his supervisor fired him again on Thursday, August 10, 2023. *Id.* ¶ 27. Again, HR instructed him to return home and wait for their call—but this time Plaintiff did not receive a call, was unable to reach Defendant, and was never scheduled to work for Defendant again. *Id.* ¶¶ 28-29. Plaintiff therefore alleges that he was fired on or about August 10. *Id.* ¶ 30.

The TAC now asserts three counts. Count I alleges FMLA interference through Defendant's failure to provide notices that are required under the FMLA, which Plaintiff alleges prejudiced his ability to obtain reinstatement. Doc. 55 ¶¶ 42-86, 77. Count II alleges FMLA interference through Defendant's failure to reinstate Plaintiff after he took protected leave. *Id.* ¶¶ 87-128, 116. In Count III, Plaintiff alleges FMLA retaliation through Defendant's termination of his employment in retaliation for his exercise of his FMLA rights. *Id.* ¶¶ 129-158, 153.

## II.    <u>Legal Standard</u>

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009), quoting Fed. R. Civ. P. 8(a)(2). Labels, conclusions, and formulaic recitations of the elements of a cause of action are not sufficient. *Id.*, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere naked assertions are also insufficient. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). However, the Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.*

## III.    <u>Discussion</u>

The FMLA creates two types of claims:

> interference claims, in which an employee asserts that his employer denied or otherwise interfered with his substantive rights under the Act, *see* 29 U.S.C. § 26125(a)(1), and retaliation claims, in which an employee asserts that his employer discriminated against him because he engaged in activity protected by the Act, *see* [*id.*].

*Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1206 (11th Cir. 2001).

To state a claim for FMLA interference, an employee must establish that he was entitled to a benefit under the FMLA, and his employer denied him that benefit. *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1191 (11th Cir. 2015). An employee is entitled to FMLA leave if he suffers from a serious health condition that makes him unable to perform the functions of his position, and he gives proper notice to his employer of his need for leave. *Id.* at 1194, 1195. Further, "[a]n employee may obtain relief for interference with an FMLA right only if she 'has been prejudiced by the violation.'" *Ramji v. Hospital Housekeeping Systems, LLC*, 992 F.3d 1233, 1245 (11th Cir. 2021), quoting *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002).

To state a claim for FMLA retaliation, an employee must show that: (1) he was engaged in an activity that was protected by the FMLA; (2) he suffered an adverse employment decision; and (3) the decision was causally related to a protected activity. *Pereda v. Brookdale Senior Living Communities, Inc.*, 666 F.3d 1269, 1275 (11th Cir. 2012) (citations omitted). A request for leave that is protected by the FMLA is a protected activity for purposes of a retaliation claim. *See Walker v. Elmore Cnty. Bd. of Educ.*, 379 F.3d 1249, 1252-53 (11th Cir. 2004).

In its latest motion to dismiss, Defendant argues that Plaintiff has failed to cure the defects the Court identified in the prior Order. Doc. 56. Specifically, Defendant contends that Plaintiff's allegations are still insufficient to plausibly allege that he suffered from a serious health condition, that he gave Defendant adequate notice that the FMLA may apply to his leave request, and that he suffered prejudice. *Id.* Defendant argues that the first two defects are fatal to both the interference and

retaliation claims, while the lack of prejudice is a third reason to dismiss the interference claims. *Id.*

The Court finds that the Third Amended Complaint adequately and plausibly alleges a serious health condition and notice. However, the allegations are insufficient with respect to prejudice from any FMLA interference. Accordingly, Counts I and II are due to be dismissed.

### A. Serious Health Condition

Under the FMLA, an eligible employee is entitled to protected medical leave because of, *inter alia*, "a serious health condition that makes the employee unable to perform the functions of" the employee's position. 29 U.S.C. § 2612(a)(1)(D). Both FMLA interference and retaliation claims require the plaintiff to establish a "serious health condition." *Russell v. North Broward Hosp.*, 346 F.3d 1335, 1340 (11th Cir. 2003).

The FMLA defines a "serious health condition" as "an illness, injury, impairment, or physical or mental condition that involves (A) inpatient care in a hospital, hospice, or residential medical care facility; or (B) continuing treatment by a health care provider." *Id.* § 2611(11).[2] In turn, the FMLA's implementing regulations define "continuing treatment by a health care provider," in relevant part, as:

---

[2] The TAC's allegation that Plaintiff's medical conditions are a "serious health condition" under the FMLA, Doc. 55 ¶ 15, is conclusory and must be given no weight, absent factual allegations that plausibly establish the existence of such a condition as defined by the FMLA and Code of Federal Regulations. Likewise, Plaintiff's bare allegation that he was "under continued evaluation by professional healthcare specialists (immunologist/allergist/ dermatologist)," *id.* ¶ 13, 20, is insufficient to plausibly allege the requirements of 29 C.F.R. § 825.115(a)(2). *See infra.*

> (a) Incapacity and treatment. A period of incapacity of more than three consecutive, full calendar days, and any subsequent treatment or period of incapacity relating to the same condition, that also involves:
>
>> (1) Treatment two or more times, within 30 days of the first day of incapacity, unless extenuating circumstances exist, by a health care provider, by a nurse under direct supervision of a health care provider, or by a provider of health care services (e.g., physical therapist) under orders of, or on referral by, a health care provider; or
>>
>> (2) Treatment by a health care provider on at least one occasion, which results in a regimen of continuing treatment under the supervision of the health care provider.
>>
>> (3) The requirement in paragraphs (a)(1) and (2) of this section for treatment by a health care provider means an in-person visit to a health care provider. The first (or only) in-person treatment visit must take place within seven days of the first day of incapacity.

29 C.F.R. § 825.115.  The term "incapacity" means "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." *Id.* § 825.113(b).

The Court previously found that Plaintiff plausibly alleged that he was incapacitated for "more than three consecutive, full calendar days," 29 C.F.R. § 825.115(a), even though he only missed two days of work. Doc. 43 at 7-8; *cf.* Doc. 56 at 6-7.  The TAC's allegations about the period of his incapacity are identical, so it continues to plausibly allege this aspect of an FMLA claim. Doc. 55 ¶¶ 16-19, 24.

The prior Order found, however, that Plaintiff had not plausibly alleged that he suffered from a serious health condition, because there was no indication that he received in-person treatment within seven days of the onset of his incapacitation. *See*

29 C.F.R. § 825.115(a)(3); Doc. 43 at 8.  The SAC alleged only that he obtained a medical appointment for Monday, August 7, 2023. *See id.*  The TAC now alleges that he "sought and received in-person treatment with his health care provider" on August 2, 2023, "[n]otwithstanding" that he obtained an appointment for August 7. Doc. 55 ¶ 18.

Defendant argues that this new allegation about the August 2 appointment is "contradicted" by the fact that all prior versions of the complaint referred only to the August 7 appointment. Doc. 56 at 8.  On a motion to dismiss, however, the Court must read the allegations in the light most favorable to Plaintiff and must assume that they are true. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Hunt v. Aimco Properties, L.P.*, 814 F.3d 1213, 1221 (11th Cir. 2016).  A reasonable reading of the TAC exists in which Plaintiff had appointments on *both* August 2 and August 7, which would satisfy the requirements of 29 C.F.R. § 825.115(a), without any contradiction in the alleged facts.  To the extent Defendant argues that it is incredible that Plaintiff would not have mentioned his August 2 appointment in one of the three prior complaints, this argument is not appropriate for a motion to dismiss.   The TAC plausibly alleges the element of a serious health condition.

## B. Notice

The second defect identified in the Court's prior Order was an insufficiency in the allegations that Plaintiff gave Defendant the required notice of his need for FMLA leave. Doc. 43 at 9-13; *see, e.g.*, *White v. Beltram Edge Tool Supply, Inc.*, 789 F.3d 1188, 1195 (11th Cir. 2015).

Where the need to take FMLA leave is unforeseeable, an employee must provide notice, "as soon as practicable under the facts and circumstances of the particular case," in a communication that includes "sufficient information for an employer to reasonably determine whether the FMLA may apply to the leave request." 29 C.F.R. §§ 825.303(a), (b). The employee "need not expressly assert rights under the FMLA or even mention the FMLA." *Id.* § 825.303(b). He may indicate, for example, that he "is under the continuing care of a health care provider," or that "a condition renders [him] unable to perform the functions of the job[.]" *Id.* However, "[c]alling in 'sick' without providing more information will not be considered sufficient notice to trigger an employer's obligations under the Act." *Id.*

The SAC alleged only that Plaintiff called in sick, without any additional information. *See* Doc. 43 at 10-11. In the TAC, however, he alleges that he "informed his supervisor" on Tuesday, August 1, "that he had been suffering from skin rashes all over his body, vomiting, fever, and diarrhea[,]" and that "he had been under the continuing care of a doctor and that his condition rendered him unable to perform the functions of his job." Doc. 55 ¶¶ 22-23. This new information is sufficient to plausibly allege that Plaintiff gave Defendant proper notice of his need to take FMLA leave.

For this element, too, Defendant questions the veracity of the new allegation. Defendant provides a record of what it asserts is the text message exchange between Plaintiff and his supervisor on August 1.[3]   It reads:

---

[3] Defendant argues its exhibit may be considered on a motion to dismiss because it is central to Plaintiff's claim and undisputed, in that its authenticity is not challenged. Doc. 56 at 2 n.2.

*Tuesday, August 1, 2023 4:46 AM*

Plaintiff: I'm sorry i can't go to work today.  I feel very un well [sic].  Thanks.

*Tuesday, August 1, 2023 3:46 PM*

Supervisor: Hi Hector, How are you feeling?  I hope you are doing well.  Let me know if you are coming to work tomorrow morning or not.  Thanks!

*Wednesday, August 2, 2023 4:26 PM*

Plaintiff: I don't fell [sic] well enough to work tomorrow I'll spend [sic] Thursday.

Doc. 56-1.  Defendant contends that the text message conversation "directly contradict[s]" Plaintiff's new allegations about what he told his supervisor. Doc. 56 at 11.

 The text message conversation between Plaintiff and his supervisor does not conclusively contradict Plaintiff's new allegations about what he informed his supervisor on August 1.  Plaintiff does not allege that he communicated with his supervisor exclusively by text message; he uses the general terms "informed" and "notified," without specifying the medium of communication.  It is not implausible, then, that he provided the additional information that is not reflected in his text message by another means, such as a phone call.

---

Plaintiff does not address the exhibit in his response in opposition to the motion to dismiss, which suggests that he does not challenge its authenticity.  But the Court need not determine whether it may properly consider the exhibit without converting the motion to a motion for summary judgment, because it finds that this aspect of Defendant's motion to dismiss is due to be denied even if the Court considers it, as explained *infra*.

The Court reaches this conclusion because of its obligation to assume that the allegations in the complaint are true, "even if doubtful in fact." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see id.* at 556, quoting *Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance…dismissals based on a judge's belief of a complaint's factual allegations"); *Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (Souter, J., dissenting) (in *Twombly*, the court "made it clear…that a court must take the allegations as true, no matter how skeptical the court may be."). The Court cannot disregard allegations that specifically and plausibly allege the elements of the claim and that are not directly contradicted. *See, e.g.*, *Griffin Industries, Inc. v. Irvin*, 496 .3d 1189, 1206 (11th Cir. 2007) (when exhibits contradict "general and conclusory allegations of the pleading, the exhibits govern."). Accordingly, this aspect of Defendant's motion to dismiss is also due to be denied.

## C. Prejudice

Next, Defendant argues that Plaintiff cannot show he was prejudiced from any interference with his FMLA rights, because he received all the leave that he requested and he was reinstated after returning from leave. Doc. 56 at 11-12. Plaintiff responds that the failure to provide the required FMLA notices (Count I) "prevented him from obtaining FMLA benefits to which he was entitled and…prejudiced his ability to obtain reinstatement." Doc. 59 at 8-9, citing Doc. 55 ¶¶ 70-72. With respect to Count II, Plaintiff argues Defendant interfered with his right to be reinstated after taking protected leave by terminating him on August 3 and 10. Doc. 59 at 9.

As a threshold matter, it is difficult to understand the allegations of the TAC because, as with the previous iterations of the complaint, each count restates most or all the factual allegations, even though the first paragraph of each count also incorporates by reference the same allegations. As the Court cautioned Plaintiff in its prior Order, *see* Doc. 43 at 15 n.4, this drafting method exacerbates any lack of clarity in the complaint. It results in a pleading that is bloated and difficult—although not "virtually impossible"[4]—"to know which allegations of fact are intended to support which claim(s) for relief." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1325 (11th Cir. 2015) (quotation omitted).

In any event, the Court agrees with Defendant that the TAC still does not plausibly allege prejudice that Plaintiff experienced because of alleged interference with his FMLA rights. The Court's prior Order found that the August 3 termination did not constitute prejudice because of any alleged interference, as the SAC had alleged in a single count, since Plaintiff was given paid leave for the two missed days and was permitted to return to work. Doc. 43 at 13. The Order noted that it was possible interference claims could lie based upon the August 10 termination and the failure to satisfy FMLA notice requirements, but that the SAC did not state a claim under either

---

[4] Because the lengthy factual allegations that are repeatedly stated in the TAC are—largely— relevant to each of the counts, however, the Court will not, *sua sponte*, dismiss the TAC as a shotgun pleading. *Cf. Weiland*, 792 F.3d at 1322 (describing the second type of "shotgun pleading" as one that is "replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action.").

theory. *Id.* at 13-15. The TAC attempts to articulate both of those theories in Counts I and II, respectively, but is unsuccessful.

    *1. Count I (Failure to Give FMLA Notices)*

    Count I alleges that Defendant interfered with Plaintiff's FMLA rights by failing to give him the notices that the FMLA requires. The Court pauses to acknowledge that the TAC's allegations plausibly establish that a duty arose on Defendant's part to provide certain notices under the FMLA, and that Defendant failed to provide those notices. Plaintiff's alleged disclosure of information about his ongoing illness and period of incapacity to his supervisor constituted a situation in which "the employer acquires knowledge that an employee's leave may be for an FMLA-qualifying reason." 29 C.F.R. § 825.300(1). Accordingly, the disclosure triggered Defendant's duty to provide "eligibility notice," by "notify[ing] the employee of the employee's eligibility to take FMLA leave within five business days[,]" and "rights and responsibilities notice," which is "written notice detailing the specific expectations and obligations of the employee and explaining any consequences of a failure to meet these obligations," including specific information detailed in the regulation. *Id.* §§ 825.300(b)(1), 825.300(c)(1). The TAC alleges that Defendant did not provide these notices. Doc. 55 ¶ 70. Therefore, it plausibly alleges that Defendant denied Plaintiff a leave benefit under the FMLA. *Ramji v. Hospital Housekeeping Systems, LLC*, 992 F.3d 1233, 1245 (11th Cir. 2021).

    Nonetheless, a "technical FMLA violation alone is not enough" to establish an FMLA interference claim. *Id.* at 1241. The third element of an interference claim

requires a plaintiff to establish that he has been prejudiced by the violation, in that the violation caused him to suffer injury that could be remedied through damages or equitable relief. *Id.* at 1245. Plaintiff alleges that Defendant's failure to provide him with the required notices "prejudiced Plaintiff's ability to obtain reinstatement," and "caused Plaintiff to lose his employment." Doc. 55 ¶¶ 72, 79. However, a causal connection between the failure to provide the notices and Plaintiff's termination is not self-evident. He does not allege what might have occurred differently, for example, or what he might have done if he had received the notices. *Cf., e.g., Ramji*, 992 F.3d at 1246 (plaintiff asserted that, if she had been advised of her FMLA rights, she would have taken a longer leave and received additional treatment, instead of returning to work too early without the ability to perform the essential functions of the position).

The Court's prior Order stated,

> The SAC does not adequately allege any causal connection between Defendant's alleged failure to provide notice and Plaintiff's August 10 termination, nor does it identify other prejudice Plaintiff may have experienced[.] To the extent the interference claim is based on Defendant's alleged failure to provide FMLA notices, it does not state a claim.

Doc. 43 at 14. Plaintiff has failed to cure the deficiency identified in the prior Order because he still has not plausibly alleged a causal connection between Defendant's alleged denial of an FMLA benefit and his termination. Therefore, Count I does not state a claim and is due to be dismissed.

2. *Count II (Failure to Reinstate)*

Count II also fails to state a claim for FMLA interference based on denial of the right to reinstatement. The FMLA entitles employees who take FMLA leave, "on return from such leave…to be restored by the employer to the position of employment held by the employee when the leave commenced." 29 U.S.C. § 2614(a)(1); *see also* 29 C.F.R. § 825.214 ("Employee right to reinstatement: ... On return from FMLA leave, an employee is entitled to be returned to the same position the employee held when leave commenced[.]"). Therefore, FMLA interference may take the form of denying an employee's right to reinstatement after a qualifying FMLA leave. *See Strickland v. Water Works and Sewer Bd. of City of Birmingham*, 239 F.3d 1199, 1208 (11th Cir. 2001) ("an employee returning from covered leave is entitled to be restored to his former position or its equivalent."), citing 29 U.S.C. § 2614(a)(1).

Plaintiff alleges that he was denied the right to reinstatement after returning from leave by being terminated twice, on August 3 and 10. *See* Doc. 55 ¶ 115. The Court's prior Order found that Plaintiff did not allege any prejudice from the August 3 termination, because he was given paid leave for the two missed days and permitted to return to work. Doc. 43 at 13. *See also*, *e.g.*, *Chavous v. City of Saint Petersburg*, No. 22-10228, 2024 WL 366243, *2 (11th Cir. Jan. 31, 2024) (where plaintiff's first termination "was ultimately rescinded and he was made whole, he was not denied a benefit to which he was entitled under the FMLA.") (quotation omitted); *Giles v. Daytona State Coll.*, No. 6:11-cv-1216, 2013 WL 12140454, *11 (M.D. Fla. Feb. 11, 2013) (interference claim failed when it was undisputed that plaintiff was reinstated

after successfully challenging a termination), *aff'd*, 542 F. App'x 869 (11th Cir. 2013). Because the TAC does not allege different facts on this topic, the Court finds that it still fails to plausibly allege prejudice from the August 3 termination.

The August 10 termination, on the other hand, plainly caused Plaintiff prejudice. But the allegations regarding the August 10 termination suffer from a different defect. *See* Doc. 55 ¶¶ 116-19. Because Plaintiff was restored to his former position following the allegedly covered leave (once the August 3 termination was revoked), and he worked in that position as usual for the next several days, the August 10 termination cannot constitute a denial of the right to be restored to his position *on return from* FMLA leave. *See* 29 U.S.C. § 2614(a)(1)(A).

Courts have generally declined to find that an employer denies an employee's FMLA right to reinstatement or restoration by taking an adverse action *after* the employee has been reinstated following a covered leave. "Upon an employee's return and restoration to her former position…any subsequent adverse employment action cannot support an interference claim (although it might support a retaliation claim)." *Cooper v. Walker Cnty. E-911*, No. 6:16-cv-1746, 2018 WL 3585217, at *16 (N.D. Ala. July 26, 2018). After all, "an employee has a right *following FMLA leave* to be restored to the same position or to an equivalent position[.]" *Jackson v. Norfolk S. Ry. Co.*, No. 1:20-CV-859-MLB, 2023 WL 2429481, at *8 (N.D. Ga. Mar. 9, 2023), quoting *Jones v. Aaron's Inc.*, 748 F. App'x 907, 919 (11th Cir. 2018) (emphasis added by *Jackson*). In *Jackson*, for example, the court found that a termination on August 25, following the

plaintiff's FMLA leave on August 11, did not constitute a violation of the right to reinstatement. 2023 WL 2429481 at *8.  Likewise, in *Barnes v. Ethan Allen, Inc.*, 356 F. Supp. 2d 1306, 1311 (S.D. Fla. 2005), *aff'd,* 149 F. App'x 845 (11th Cir. 2005), the court dismissed an interference claim where the plaintiff did not suffer an adverse employment action until five weeks after returning from leave. *See also Rivero v. Diocese of Palm Beach, Inc.*, No. 20-cv-81060, 2020 WL 13401259, *1 (S.D. Fla. Nov. 23, 2020) (dismissing interference claim where "[t]here [wa]s no question that [defendant] in fact reinstated her and continued to employ her for over three months upon her return."); *Wood v. Gilman Bldg. Prods., Inc.*, No. 4:17-cv-63, 2018 WL 10667464, *5 (N.D. Fla. March 19, 2018) (no reasonable jury could find that termination constituted FMLA interference given, *inter alia*, the seven months between plaintiff's reinstatement from leave and termination), *aff'd*, 769 F. App'x 796 (11th Cir. 2019); *cf. Whitman v. Proconex, Inc.*, No. 08-2667, 2009 WL 141847, *5 (E.D. Pa. Jan. 20, 2009) (plaintiff stated a claim for FMLA interference where her employment was terminated "within ten minutes" of her return from maternity leave).

Here, although Plaintiff worked in his old position for a shorter period of time than in the cases above, his allegations plainly establish that he was restored to his old position after returning from his absence. *See* Doc. 55 ¶ 26 ("Plaintiff returned to work as agreed the next day, Friday, August 4, 2023.  He continued his regular schedule normally.").  Accordingly, he has not stated a claim for FMLA interference in Count II.

In contrast, the factual allegations plausibly allege that Plaintiff was terminated on August 10 in *retaliation* for exercising his FMLA rights.  Indeed, Defendant does not argue that Plaintiff fails to plausibly allege an adverse action that was causally connected to his FMLA rights.  Therefore, Count III states a claim for FMLA retaliation, and Defendants' motion to dismiss Count III is due to be denied.

The Court declines to offer Plaintiff a fourth opportunity to draft a pleading that states a claim for FMLA interference.  Accordingly, just as Plaintiff was cautioned in the prior Order, the dismissal of Counts I and II will be with prejudice. *Id.* at 15 ("the failure to cure the deficiencies identified in this Order may result in dismissal of [the] claims with prejudice[.]").

It is **ORDERED**:

1. Defendant Sarasota-Manatee Jewish Housing Council, Inc.'s Motion to Dismiss Third Amended Complaint (Doc. 56) is **GRANTED-IN-PART and DENIED-IN-PART**.

2. The motion is granted to the extent that Counts I and II of the Third Amended Complaint (Doc. 55) are **dismissed with prejudice**.  The motion is otherwise denied.

**DONE** and **ORDERED** in Tampa, Florida on May 7, 2025.

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:
Counsel of Record; Unrepresented Parties